**AMERICAN CAN COMPANY,**
**Plaintiff-Appellee,**

v.

**Ishwar MANSUKHANI, et al.,**
**Defendants-Appellants.**

**No. 85–2437.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 28, 1986.

Decided March 12, 1987.

Andrew O. Riteris, Michael, Best, & Fredrick, Milwaukee, Wis., for defendants-appellants.

Douglas W. Wyatt, Wyatt, Gerber, Shoup, Scobey & Badie, New York City, for plaintiff-appellee.

Before POSNER and FLAUM, Circuit Judges and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The primary question presented by the appeal in this diversity action under Wisconsin law is whether the district court, 621 F.Supp. 111 (1985), erred in supplementing a permanent injunction to include a prohibition against the sale or production of two of the defendants' jet inks. For the reasons stated below, we will affirm.

## I.

Plaintiff-appellee American Can Co. ("American Can") develops, manufactures, and sells commercial "jet inks." These inks are sprayed onto a surface and are, therefore, useful for printing on materials or objects for which conventional contact printing is not suitable (such as metal cans). The defendants-appellants are Ishwar Mansukhani, Ruth Brand, and their businesses, Brand Associates and Brand M., Inc. (hereinafter collectively referred to as "Mansukhani"). Mansukhani is an experienced ink chemist. Brand is also a chemist, although she had no experience with inks until she went into business with Mansukhani in 1980.

Mansukhani was hired in 1976 by M & T Chemicals, a subsidiary of American Can,[1] to develop jet inks. He was at that time familiar with ink chemistry but had no experience with jet inks. Mansukhani signed an agreement with American Can in which he promised that he would not use his employer's trade secrets to his own advantage and that he would return all documents when he left the company. Mansukhani developed several jet inks for American Can over the next four years. In 1980 Mansukhani considered leaving the company and American Can asked him to remain. Mansukhani declined the offer and went into the commercial jet ink business with Brand in December of that year. Brand and Mansukhani soon thereafter started to sell jet inks to American Can's customers at prices substantially lower than those American Can was offering.

American Can filed this diversity action in district court in October 23, 1981. Its complaint alleged that Mansukhani was engaging in unfair competition through the misappropriation of American Can's trade secrets. Following a trial in March of 1982, the district court found that Mansukhani, by taking patent applications, ink formulas, and other documents from American Can when he left the company, had violated his confidentiality agreement with American Can. The court also found that Mansukhani had sold inks to several former customers of American Can at prices substantially below those it offered. It was also shown at trial that the compositions of Mansukhani's inks at issue in that trial were identical to a series of inks he had helped develop as an employee of American Can. The district court found that the ink formulas were trade secrets under Wisconsin law and that Mansukhani had misappropriated those secrets. The defendant was then permanently enjoined from selling the inks developed while Mansukhani was employed by American Can. The permanent injunction, which was later clarified by the district court, was affirmed on appeal by this court.[2] *American Can v. Mansukhani*, 728 F.2d 818 (7th Cir.1982) ("*Mansukhani I*").

In July of 1983 American Can contended to the district court in an ex parte filing that the defendants were violating the permanent injunction by selling certain inks

---

1. The ownership of M & T Chemicals changed several times after Mansukhani was hired. The subsidiary was, however, sold back to American Can in 1980. *See American Can v. Mansukhani*, 742 F.2d 314, 317 (7th Cir.1984) ("*Mansukhani II*"). These transactions have no bearing on the disposition of this appeal, and we shall for the sake of simplicity refer to all of Mansukhani's employers as "American Can."

2. *Mansukhani II* contains an exhaustive summary of the earlier proceedings in this action. 742 F.2d at 317–19. We have restricted our factual discussion to the issues relevant to this appeal.

designated as "SK–2914" and "SK–2916" (hereinafter "SK inks"). American Can sought an ex parte temporary restraining order, a preliminary injunction, and an order holding the defendants in contempt for violation of the permanent injunction. The district court eventually granted an ex parte temporary restraining order. After a hearing in August of 1983 the court also granted a preliminary injunction, which included the SK inks.

The defendants appealed the grant of the preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1). This court reversed and remanded for further proceedings. *American Can Co. v. Mansukhani*, 742 F.2d 314 (7th Cir.1984) (*"Mansukhani II"*). In pertinent part this court vacated the preliminary injunction on the grounds that the plaintiff had failed to establish a likelihood of success on the merits and that the terms of the injunction were too vague to conform with Federal Rules of Civil Procedure 65. We concluded that:

> [T]he public information about plaintiff's ink formulas (particularly as revealed in patent documents) and Mansukhani's own knowledge and experience had placed very narrow limits on plaintiff's trade secrets in the original trial. The district court's functional or practical similarity standard did not give adequate consideration to those original, narrow limits on plaintiff's trade secrets. The district court therefore erred by issuing the new preliminary injunction without finding that defendants' new inks were in fact *substantially derived* from plaintiff's trade secrets and not from the public information and Mansukhani's own skill, knowledge, and experience.

742 F.2d at 326 (emphasis added). We remanded so that the district court could consider the trade secrets under the proper legal standard of substantial derivation. We reached no decision regarding the contempt issue because at the time of that appeal the district judge had not reached a decision regarding contempt.

Following the remand, the district court denied American Can's contempt motion and announced that it would supplement the permanent injunction against the defendants to include the SK inks if it found that those inks were substantially derived from American Can's trade secrets. According to the court, the plaintiff had already made a strong factual showing that the defendants' inks were so derived, but the defendants had refused to address the question. The defendants were ordered to file a brief discussing the derivation question and American Can was ordered to reply.

Mansukhani asserted that because *Mansukhani II* represented a "final judgment" on the matter, the doctrine of res judicata barred any supplemental injunctive relief with regard to the SK inks absent a showing of unforeseen change in circumstances and that, in any event, American Can had not presented a proper motion for such relief. It was also the defendants' contention that the matters raised at the December 1983 hearings related only to the contempt motion and that no equitable relief independent of that motion was permissible. They also claimed that the SK inks were in existence at the time of the March 1982 hearings; thus, American Can's claims were nothing more than an untimely attempt to enjoin a product it had simply overlooked. Furthermore, the defendants asserted that the SK inks in no way resembled American Can's protected inks. The defendants also stated that if American Can's request were to be heard, they wanted an opportunity for another hearing. They did not, however, indicate what new evidence they would present although they did claim that they would demonstrate that the plaintiff's formula was now in the public domain.

American Can argued, inter alia, that a permanent injunction had always been contemplated by the district court, that further relief was not foreclosed by *Mansukhani II*, that the court had the authority to augment the permanent injunction, and that there was no need for a new hearing because the defendants had failed to show in the contempt hearing that the SK inks were derived from the plaintiff's patents and not from the series of inks already protected by the permanent injunction.

The trial court issued an order permanently enjoining defendants from "producing and/or selling their jet inks numbered SK–2914 and SK–2916." The accompanying decision stated:

> [T]he court was particularly impressed by (1) the fact that the defendants were able to "develop" their inks in a few hours, as opposed to the years it took the plaintiff to research and test its formulas; (2) the testimony of plaintiff's expert ... with respect to his analysis of defendants' and plaintiff's inks; (3) a comparison of the formulas and infrared spectra of plaintiff's and defendants' inks; and (4) [an exhibit] which shows in defendant Mansukhani's own handwriting how he derived the formula for SK–2914 from plaintiff's protected formula P–743. Based on this evidence, as well as other testimony heard and exhibits reviewed by the Court throughout the lengthy history of this case, the Court is convinced beyond a doubt that defendants' [SK inks] were not the product of their own innovation, but were instead substantially derived from plaintiff's trade secrets.

This appeal followed.[3]

## II.

### A. Res Judicata

 It is apparently the defendants' position that our decision in *Mansukhani II* and the district court's denial in March of 1985 of the plaintiff's contempt motion have the requisite preclusive effect under the doctrine of res judicata to bar a supplemental injunction against the SK inks.[4] This contention borders on the frivolous. Res judicata has no bearing on the case at bar, because an element required to invoke res judicata is lacking—there is no final judgment on the merits of the case.

*Mansukhani II* was an interlocutory appeal; thus it was by definition from a decision that was not final, at least in the sense intended by 28 U.S.C. §§ 1291–1292. As we noted above, we reversed there because we ruled that the district court could not enjoin the SK inks absent a finding that the defendants' inks were substantially derived from American Can's trade secrets. 742 F.2d at 331. We reached no ultimate conclusion and expressly stated that "any injunctive relief should be consistent with our opinion." *Id.* at 334. The trial court precisely followed those instructions and enjoined the defendants' production and sale of the inks under the proper legal standard. Moreover, many matters were still pending in the district court when the case was remanded. Res judicata has no application to interlocutory rulings rendered during the course of the same lawsuit. *Cf. Christianson v. Colt Industries Operating Corp.*, 798 F.2d 1051, 1056 (7th Cir.1986).

Nor can the decision not to find Mansukhani in contempt be the final decision on the merits necessary to preclude the district court's injunction prohibiting Mansukhani's production and sale of the SK inks. Among other things, that decision held only that the SK inks were not covered by the original permanent injunction. It did not address the issue of whether the injunction should be supplemented to include the SK inks. There is not even a showing that American Can knew of the SK inks at the time it gained the original injunction.[5]

---

3. The source of the district court's subject-matter jurisdiction is 28 U.S.C. § 1332. As in *Mansukhani II*, we have jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1).

4. As in *Mansukhani II*, *see* 742 F.2d at 319, the defendants have presented numerous issues for resolution on appeal, many of which merit little or no discussion. Appellate counsel should resist the temptation to attack an adverse judgment with a blunderbuss, because "[t]he strength of meritorious arguments is dissipated by the weakness of groundless ones." *Goins v. Lane*, 787 F.2d 248, 254 (7th Cir.1986).

The defendants' argument that American Can did not file a proper motion is, to say the least, unavailing. There is no question that the defendants had more than adequate notice that the plaintiff was seeking further equitable relief and, in any event, any assumed deficiency in American Can's prior submissions was cured with the "renewed" motion for an injunction filed in the district court on May 2, 1985.

5. The district court was entirely correct in assuming that it possessed the authority to grant further injunctive relief. In addition, American Can was entitled to seek such relief after it

## B. Request for a Hearing

██ The defendants maintain that the district court erred in not holding a hearing prior to issuing the permanent injunction prohibiting the sale or production of the SK inks. We disagree. At the contempt hearing that preceded *Mansukhani II*, the defendants attempted to demonstrate that their SK inks were derived from one of American Can's patents rather than the inks covered by the original permanent injunction. *See Mansukhani II*, 742 F.2d at 325–33. The district court found that the SK inks represented a misappropriation of the plaintiff's trade secrets. We reversed, not because the evidence upon which the district judge relied was insufficient, but because we ruled that the district judge was required to apply a legal standard different from the one he had used. The lower court was thus free to rely on the record before it if that record was adequate to resolve the derivation question. The district court warned Mansukhani when it denied American Can's motion for contempt and requested briefs on the derivation question that American Can had already made a strong showing that the SK inks were derived from plaintiff's trade secrets. The district court invited the defendants to file a brief in response and the defendants chose to raise arguments based on res judicata and other issues rather than to explain to the district court what new proof they would present to show that the inks were not substantially derived from the plaintiff's trade secrets. Nor have they described in this court any proof they might offer were they allowed an additional hearing.

The defendants received a hearing sufficient to resolve the derivation issue in the context of a contempt hearing; the issues of similarity and Mansukhani's violation of his confidentiality agreement in the pursuit of that similarity suggest as much. Mansukhani now argues that a further hearing is required without presenting any argua-

ble reason why we should consider the district court's decision to rely on the extensive evidence already before it reversible error. It is not our role to cast about in the record for facts and argument upon which the defendants may rely, *see Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986), and in the absence of explanation regarding the proof defendants would present in an additional hearing, we cannot say that the district court committed reversible error by refusing to hold another hearing.

The defendants do suggest that some factual issues must be considered, but none of them suggest any new evidence defendants might offer, and none of them require reversal for any other reason. First, they maintain that the SK inks were in existence in March of 1982 and that, as a result, American Can is not entitled to supplemental equitable relief "to cover inks which were in existence at the time of the June 1982 injunction." We have not been told, however, what legal reasoning supports this assertion. Moreover, even assuming, *arguendo*, that the SK inks were in existence in 1982 American Can did not know about them primarily because of the determined efforts of the defendants to resist disclosure of information regarding their products. We see no way in which Mansukhani could bootstrap this secretiveness into a valid legal argument, and more importantly, Mansukhani has not presented us with one.

Second, the defendants contend that, as a result of our published slip opinion in *Mansukhani II*, American Can's trade secrets are now in the public domain. If the defendants believe American Can's trade secret has found its way into the public domain, that is a factual contention that they may bring to the district court's attention in a motion to modify or vacate the injunction. The decision of the district court that we are presently reviewing made no factual findings or legal conclusions in that re-

---

discovered the defendants were marketing the SK inks. *See System Federation No. 91 v. Wright*, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961); *United States v. Swift*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999

(1932); *South v. Rowe*, 759 F.2d 610, 613 (7th Cir.1985); *Atlas Scraper & Engineering Co. v. Pursche*, 357 F.2d 296, 298 (9th Cir.1966), *cert. denied*, 385 U.S. 846, 87 S.Ct. 47, 17 L.Ed.2d 76 (1967).

gard and we have no intention of usurping the factfinding function of the trial court.

## C. The Permanent Injunction

■ The contentions of the defendants challenging the injunction itself are somewhat tangled but we have unraveled two skeins of argument. The first appears to be centered around the district court's factual finding that the SK inks were substantially derived from American Can's trade secrets. However, the defendants have not identified the specific findings with which they take issue. In any event, the evidence in support of the injunction against the production and sale of the SK inks is overwhelming. American Can demonstrated by way of expert testimony that the SK inks were similar, although not identical, to the series of American Can's inks protected under the original permanent injunction. Substantial derivation is apparent in Mansukhani's handwritten notes reciting the precise proportions of the plaintiff's formulas and those of the SK inks and from the fact that he developed the SK inks in a matter of hours, when American Can's inks typically took years to create. Mansukhani has not advanced an explanation for this purportedly epiphanic episode and the district court found that the explanation was Mansukhani's misappropriation of the plaintiff's proprietary information. We concur.[6]

■ The defendants also argue that under *Mansukhani II* the district court erred in enjoining the defendants for an indefinite period. *See Mansukhani II*, 742 F.2d at 334 n. 24. In *Mansukhani II* we noted the current state of federal law regarding injunctions in trade secret cases, and we informed the district court that any injunction must be consistent with the narrow scope of the trade secret at issue here. We also noted that trade secrets cases are usually in federal court under diversity or some form of ancillary jurisdiction, which suggested to us that a consideration of the relevant state law on trade secret injunctions would be appropriate. That was all we did, and the district court's injunction does no violence to those concerns.[7] As we have already said once, the district court may be asked to modify the injunction should facts appear that suggest that its present indeterminate length no longer reflects the status of American Can's trade secrets. No such facts were found by the district court in its decision now before us.

### III.

We AFFIRM the order granting the permanent injunction.

---

6. The defendants argue that the district court erred "by failing to make any findings of fact which could support even an inference that 'the precise proportions' of the known ingredients of the P–743 ink, which was the subject of the 1982 injunction, was [sic] the genesis of the [SK inks]." Defendants misunderstand *Mansukhani II*. We held there that the standard to apply to determine if injunctive relief was authorized was substantial derivation. The 'precise proportions' we referred to described the boundaries of American Can's trade secrets, not those products that might be substantially derived therefrom. *Mansukhani II*, 742 F.2d at 327. Indeed,

we stated that "a party may not use another's trade secret, even with independent improvements or modifications, so long as the product is substantially derived from the trade secret." *Id.* at 328–29; *cf. Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 607, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950) ("Outright and forthright duplication is a dull and very rare type of infringement.").

7. We have considered the other arguments advanced by the defendants and find them without merit. *See supra* note 4.