**NEW ENGLAND POWER COMPANY, et al., Petitioners,**

v.

**UNITED STATES NUCLEAR REGULA-TORY COMMISSION and United States of America, Respondents.**

No. 81–1839.

United States Court of Appeals, First Circuit.

Argued June 4, 1982.

Decided July 19, 1982.

Gerald Charnoff, Washington, D. C., with whom Jay E. Silberg, James B. Hamlin, and Shaw, Pittman, Potts & Trowbridge, Washington, D. C., were on brief, for petitioners.

Peter G. Crane, Acting Asst. Gen. Counsel, with whom E. Leo Slaggie, Acting Sol., Richard H. Levi, U. S. Nuclear Regulatory Com'n, Anne S. Almy and Robert L. Klarquist, Attys., U. S. Dept. of Justice, Washington, D. C., were on brief, for respondents.

Before CAMPBELL and BREYER, Circuit Judges, and PETTINE,* District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Petitioning power companies seek review pursuant to 28 U.S.C. § 2342(4), 42 U.S.C. § 2239(b), of an interpretative rule promulgated by the Nuclear Regulatory Commission ("NRC"), 46 Fed.Reg. 49,573 (1981). The challenged rule allows the NRC to base fees charged to applicants for nuclear reactor licenses upon agency costs, and to collect such fees even though the applications

* Of the District of Rhode Island, sitting by desig-    nation.

are voluntarily withdrawn before final agency action thereon.[1]

The licenses at issue are so-called construction permits which utilities wishing to build nuclear power plants must first obtain from the NRC. *See* 42 U.S.C. § 2235; Energy Reorganization Act of 1974, 42 U.S.C. §§ 5801 *et seq.; see generally Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 526, 98 S.Ct. 1197, 1203, 55 L.Ed.2d 460 (1978). The application for such a permit must show in detail the preliminary design of the facility as well as much other highly technical information. *See* 10 C.F.R. § 50.-34. Review by the NRC of a single application, we are told, may consume many thousands of man-hours. To recoup its expenses, the NRC wishes to charge fees related to the actual expenses incurred in reviewing applications and to collect such fees whether or not the application is subsequently withdrawn. Petitioners argue that the NRC lacked authority to promulgate its fees rule under Title V of the Independent Offices Appropriation Act of 1952 ("IOAA"), 31 U.S.C. § 483a, and that even if such authority existed, the rule's interpretation of earlier regulations, 10 C.F.R. Part 170, as permitting the fees is unwarranted. In either case, petitioners contend that they may not legally be assessed fees on applications withdrawn before the rule became effective on November 6, 1981.

### I.

■ The rule here under review was promulgated under the IOAA, which provides as follows:

It is the sense of the Congress that any work, service, publication, report, document, benefit, privilege, authority, use, franchise, license, permit, certificate, registration, or similar thing of value or utility performed, furnished, provided, granted, prepared, or issued by any Federal agency (including wholly owned Government corporations as defined in the

Government Corporation Control Act of 1945) to or for any person (including groups, associations, organizations, partnerships, corporations, or businesses), except those engaged in the transaction of official business of the Government, shall be self-sustaining to the full extent possible, and the head of each Federal agency is authorized by regulation (which, in the case of agencies in the executive branch, shall be as uniform as practicable and subject to such policies as the President may prescribe) to prescribe therefor such fee, charge, or price, if any, as he shall determine, in case none exists, or redetermine, in case of an existing one, to be fair and equitable taking into consideration direct and indirect cost to the Government, value to the recipient, public policy or interest served, and other pertinent facts, and any amount so determined or redetermined shall be collected and paid into the Treasury as miscellaneous receipts: *Provided,* That nothing contained in this section shall repeal or modify existing statutes prohibiting the collection, fixing the amount, or directing the disposition of any fee, charge or price: *Provided further,* That nothing contained in this section shall repeal or modify existing statutes prescribing bases for calculation of any fee, charge or price, but this proviso shall not restrict the redetermination or recalculation in accordance with the prescribed bases of the amount of any such fee, charge or price.

31 U.S.C. § 483a. Petitioners argue that when an application is withdrawn, the utility receives no "benefit" or "thing of value" from the review work done up until that time by the NRC, since no permit is granted. They point in particular to the narrow reading of the IOAA adopted by the Supreme Court in *National Cable Television Association v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), and *Federal Power Commission v. New England Power Co.,* 415 U.S. 345, 94 S.Ct. 1151, 39 L.Ed.2d 383 (1974), asserting that these

---

[1]. A 1978 NRC regulation provided that fees were payable when review by the NRC was completed. The 1981 interpretative rule adds

explicitly that "review . . . is completed" when an application is withdrawn, and not just when a license is actually issued. *See infra* at page 7.

cases require conferral of a "special benefit" not present here before any fee may be imposed. We are satisfied, however, that the review work performed by the NRC at the request of an applicant constitutes a sufficiently substantial and particularized benefit to the applicant to justify the imposition of fees under the Court's reading of the IOAA.

In *National Cable Television*, the Court distinguished "taxes," which may only be levied by Congress, from "fees," which may properly be charged by agencies. 415 U.S. at 340–41, 94 S.Ct. at 1149. The difference is that, unlike a tax, a fee "is incident to a voluntary act, *e.g.*, a request that a public agency permit an applicant" to engage in a regulated activity, and is charged for agency action which "bestows a benefit on the applicant, not shared by other members of society."[2] *Id.* In *New England Power*, the Court stressed that fees under the IOAA may represent "only specific charges for specific services to specific individuals or companies," 415 U.S. at 349, 94 S.Ct. at 1154, and that only identifiable recipients of benefits may be assessed fees, *id.* at 349–51, 94 S.Ct. at 1154–55.

Fees for work done before an application is withdrawn pass muster under these standards. They represent charges for work done at the utility's request; they benefit the utility by assisting it in meeting its legal obligations which are prerequisite to the issuance of a permit; and the services may clearly be attributed to the specific applying utility. In *New England Power*, the Supreme Court quoted with approval a Bureau of the Budget document which suggests that the fees here could properly be authorized. The document states that fees could be charged when a service "[i]s performed at the request of the recipient and is above and beyond the services regularly received by other members of the same industry or group, or of the general public."[3] 415 U.S. at 349 n.3, 94 S.Ct. at 1154.

Circuit court cases decided after *National Cable Television* and *New England Power* also provide strong support. In *Mississippi Power & Light Co. v. NRC*, 601 F.2d 223 (5th Cir. 1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1066, 62 L.Ed.2d 787 (1980), the court upheld fees for the cost of environmental reviews of nuclear reactor applications, "because [such reviews] are a prerequisite to the issuance of a license." *Id.* at 231. Since the reviews were "a necessary part of the cost of providing a special benefit," *i.e.*, the license, fees could properly be assessed for their cost. *Id.* Similarly, the cost of certain hearings could also be charged because they are an "integral part of the process of approving an applicant's license." *Id.* Here, too, the work done is a necessary part of the process of obtaining a license. That the utility subsequently withdraws its application does not defeat the fact that it has already received a benefit by virtue of the work already done at its request. Similarly, in *Electronic Industries Association v. FCC*, 554 F.2d 1109, 1115 (D.C.Cir.1976), the court stated that fees may be charged for services which an agency must render in order for a firm to comply with regulatory requirements, since such services "create an independent private benefit" in addition to any benefit to the general public. Again, the fees here could properly be assessed under such a standard. We thus have no difficulty in concluding that the NRC could promulgate a regulation under the IOAA which would charge fees for any review work actually performed on construction permit applications even when the applications are later withdrawn.

---

**2.** Petitioners seize on other language in the opinions which uses the actual grant of a license as an example of a benefit for which a fee may be charged. Such examples are not surprising, since the facts in these cases involved actual grants. There is no indication that the Court even considered, much less meant to prohibit, fees in the absence of such grants. The same may be said for the legislative history cited by petitioners.

**3.** While the few examples given did not include the fact pattern here, the standard itself would seem to encompass the situation, and there is no indication that the examples were meant to be exhaustive.

## II.

A more difficult question is presented by petitioners' second argument, which maintains that charges may not in any event be collected on applications withdrawn prior to the effective date of the interpretative rule under review. The NRC does not dispute the proposition that the IOAA itself only authorizes the prescribing of fees *by regulation*—it does not provide for charging fees unsanctioned in the first instance by an adequate regulation. *See Alyeska Pipeline Service Co. v. United States*, 624 F.2d 1005, 1009–10 (Ct. Claims 1980). Nor does the NRC argue that the instant interpretative rule, adopted in 1981, may itself be given retroactive effect so as to apply to applications withdrawn before its effective date.[4] Rather, its position is that the fees regulation, as it stood prior to the adoption of the interpretative rule, in and of itself adequately authorized the imposition of fees for work done on applications which are later withdrawn. *See infra* page 16. The petitioning utilities argue vigorously that the prior regulation did not give them adequate notice that fees would be charged on withdrawn applications. We believe they are correct.

Up until 1968, the agency[5] did not charge fees for its regulatory activities. In 1968, regulations were issued authorizing fees that were either fixed in amount or were variable with the size of the reactor; the fees were not based on the actual cost of the work performed on an individual application. 33 Fed.Reg. 10,923. As codified at 10 C.F.R. § 170.12(b), the agency's rules provided that fees for construction permits would be payable when the provisional or final permit was issued. 33 Fed.Reg. at 10,926. The provisional permit language was later placed in a footnote, with the text reading as follows:

Fees for construction permits and operating licenses are payable when the construction permit or operating license is issued. No construction permit or operating license will be issued by the Commission until the full amount of the fee prescribed in this part has been paid.

10 C.F.R. § 170.12(b), promulgated at 37 Fed.Reg. 8,074, 8,075 (1972). Changes were proposed in 1974, 39 Fed.Reg. 39,734, 39,735, and in 1977, 42 Fed.Reg. 22,149, 22,162, but no actual changes were made until the 1978 promulgation at 43 Fed.Reg. 7,210, 7,218–19, after which the rule read as follows:

Fees for construction permits, operating licenses, manufacturing licenses, and materials licenses, are payable upon notification by the Commission when the review of the project is completed.

The 1981 interpretative rule here under review adds the following sentence to the 1978 version of section 170.12(b):

For the purpose of this part the review of a project is completed when a permit or license is issued, or an application for a permit or license is denied, withdrawn, suspended, or action on the application is postponed.

46 Fed.Reg. 49,573, 49,576 (1981).

At the outset, we note that while the petition for review formally concerns the 1981 regulation, we are actually dealing with the 1978 regulation. The NRC concedes that fees (other than an application filing fee not here at issue) for work on withdrawn applications were not authorized prior to 1978. *See* 46 Fed.Reg. 49,573, 49,-575 (1981). The question is whether the change in the regulation in 1978 may fairly be characterized as authorizing the NRC to assess and collect the cost-based fees following the withdrawal of applications when the predecessor regulations had not done so.

---

4. *See* Brief for Respondents at 43–44. *But cf.* 46 Fed.Reg. 49,573, 49,576 n.4 (rule not retroactive, but NRC asserts it could adopt such a rule if it wished). To the extent the NRC does claim the authority to adopt a retroactive fees rule, *see id.*, we reject its position as unsupported by the IOAA and as destructive of petitioners' justifiable reliance on the regulations

as they previously read, *see* page 8, *infra*. *See generally SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947).

5. Before enactment of the Energy Reorganization Act of 1974, 42 U.S.C. §§ 5801 *et seq.*, the Atomic Energy Commission regulated the nuclear power industry.

The NRC views the 1981 regulation as a mere clarification of the 1978 regulation which, it says, provided at that time (*i.e.*, in 1978) "fair and adequate notice" of its adoption of the policy later spelled out expressly in the 1981 interpretative rule. As we have already noted, the NRC does not argue that the new language should be applied retroactively to petitioners' withdrawn applications. *See supra* page 6 & note 4. Rather it simply contends that as the 1981 rule did no more than state what was inherent in the 1978 regulation, the agency could freely apply that interpretation from the date of the 1978 regulation onward.

We agree with petitioners that the 1978 regulation did not provide them with adequate notice of the change the NRC now attributes to it. While an agency's interpretation of its own regulations is of course entitled to substantial deference, it would be unfair in these circumstances to sanction a *post hoc* attempt to breathe new meaning into a regulation where such meaning was not evident at the time it was promulgated. *See generally Forbes Health Systems v. Harris*, 661 F.2d 282, 285–86 (3d Cir. 1981). By expressly requiring in the IOAA that fees be prescribed by regulation, Congress evidenced its concern that such fees be communicated in advance to those who would have to bear them, thus permitting them to take intelligent action to avoid undesired consequences. For the purpose of assessing the validity of charges from 1978–81, the question is not simply whether the 1978 regulation may have stated a principle capable of extension in the manner spelled out in the 1981 interpretative rule, but whether the 1978 regulation itself, taken in context, fairly put petitioners on notice of this extension in 1978–81, before the interpretative rule was adopted. We do not think it did.

The 1978 regulation made no express mention of any change from the prior rule that fees would not be assessed on withdrawn applications. Not until 1981 was express language to this effect added to section 170.12(b). The absence of an explicit declaration of any alteration in the con-sistently followed prior practice is in itself probative on the issues of the NRC's intent at the time and whether petitioners were given adequate notice of the alleged change. *Cf. American Frozen Food Institute v. Train*, 539 F.2d 107, 135 (D.C.Cir. 1976) (notice of rulemaking held inadequate where final rule added standard without prior notice); *compare United States v. Florida East Coast Ry.*, 410 U.S. 224, 243, 93 S.Ct. 810, 820, 35 L.Ed.2d 223 (1973) (notice of proceeding "fairly advised" interested parties of agency's proposed order).

The NRC nonetheless points to three places where it contends that adequate notice of a change in 1978 was given. We find none of them sufficient. First, in the supplementary information accompanying the 1977 fees proposal, the agency listed as one of its "guidelines for fee development" that fees may be assessed for "all services necessary for the issuance of a required permit." 42 Fed.Reg. 22,149, 22,150. This alone certainly does not indicate a change in the prior practice, for the 1977 proposed rule itself did not change the previous rule that fees would be payable when the permit was issued, thus providing no basis for charging fees on withdrawn applications. *Id.* at 22,162. The supplementary information accompanying notice of the final rule in 1978 adds that the NRC "is generally obliged to impose the fees allowed by these guidelines where it is fair and equitable to do so." 43 Fed.Reg. 7,210, 7,211. We do not find this additional language sufficiently specific to indicate a change in the long-standing rule on withdrawn applications.

The NRC relies secondly on the changed language of section 170.12(b) in 1978, contending that, especially when combined with the guidelines, it gives adequate notice of an intent to charge fees on withdrawn applications. The only explanation of the change—from payment when the permit is issued to when review is completed—in the 1978 notice, however, was simply that section 170.12 had been "revised in its entirety to accommodate the amended rule." 43 Fed.Reg. at 7,217. Again, we see no indication that the change here alleged was con-

templated or made public.[6] *Cf., e.g., National Industrial Sand Association v. Marshall*, 601 F.2d 689, 716–17 (3d Cir. 1979) (describing importance of agency articulation of reasons for its actions). The NRC does not claim that it changed its rule in 1978 for the purpose of charging for work done on withdrawn applications in response to comments submitted on the proposed rule. *Compare BASF Wyandotte Corp. v. Costle*, 598 F.2d 637, 643 (1st Cir. 1979), *cert. denied sub nom. Eli Lilly & Co. v. Costle*, 444 U.S. 1096, 100 S.Ct. 1063, 62 L.Ed.2d 784 (1980). We thus find nothing in the changes made in 1978 from the 1977 proposal or the earlier rule which may fairly be characterized as giving notice of a change in the prior practice.

The NRC's third argument is that a change in 1978 from flat fees to fees for work actually done gives such notice. Again, we disagree. Given the history and the context, *see infra*, this change alone bears no necessary relationship to whether fees would be charged on withdrawn applications. It does not provide the "clear signal" claimed for it by the NRC. 46 Fed. Reg. 49,573, 49,575. Indeed, this change provides a reasonable explanation for the change in section 170.12(b), which would allow time for the actual review costs to be determined, something which might not be possible precisely at the time the permit was issued.

In addition to the lack of any clear sign that the NRC was changing its policy on withdrawn applications in 1978, other factors suggest that the agency in fact intended no such change at that time. For example, footnote 4 to section 170.12 as promulgated in 1978, 43 Fed.Reg. at 7,220, states in relevant part,

> Where a fee has been paid for a facility early site review, the charge will be deducted from the fee for a construction permit issued for that site. A separate charge will not be assessed for a site review where the person requesting the review has an application for a construction permit on file for the same site, except where the application is withdrawn by the applicant or denied by the Commission.

While the import of this language is not entirely clear—the NRC acknowledges in its brief that it is "not a model of drafting" and that it misinterpreted the footnote in the 1981 notice accompanying the interpretative rule under review, 46 Fed.Reg. at 49,575—it does seem to suggest that even in 1978, the NRC intended not to charge for withdrawn applications, for the following reason. The purpose of the footnote is to ensure that a utility will not be assessed twice for a single site review, once for the review itself, and again as part of the fee for a construction permit. The "except" clause at the end could then reasonably be interpreted as indicating that no construction permit fee—as opposed to an early site review fee—would be assessed on a withdrawn application, thus obviating the need to prevent a double assessment.

Further, the NRC was perfectly capable of explicitly charging fees on withdrawn applications and in fact did so with respect to the initial flat filing fee, which is "charged irrespective of the Commission's disposition of the application or a withdrawal of the application." 10 C.F.R. § 170.12(a). This explicit rule stands in sharp contrast to that of the immediately following paragraph on fees for permits and licenses, which contained no such language prior to 1981. Again, this may be interpreted as evidence of an intent not to charge fees beyond those for the initial filing on withdrawn applications.

For these reasons, we do not think that the fees regulation as promulgated in 1978 gave adequate notice of an intent to charge fees for work on applications which are later withdrawn. *Cf. Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). The regulation was at best ambiguous on the agency's intentions as respects imposition of fees (other than the filing fee) in cases where the application is withdrawn

---

6. Even the NRC admits in its brief that in 1977 and 1978, "the question of withdrawn applications was foremost in no one's mind, and was at best a secondary consideration."

prior to license issuance. This being so, and given the interest of the petitioners in knowing their financial exposure so that they could minimize it by, for example, withdrawing earlier, we are unable to say, for purposes of 31 U.S.C. § 483a, that the regulation existing between 1978 and 1981 adequately "prescribe[d]" the fee which the NRC now seeks to impose. Fees may not be charged pursuant to the 1978 version of section 170.12(b) on work done on construction permit applications withdrawn before the effective date of the 1981 rule.[7]

*The petition for review is granted.*

---

**7.** While the NRC denominates its 1981 rule as an "interpretative" one, it apparently gave notice of and solicited comments on the proposed rule; the issue of whether proper notice and comment procedures were followed with respect to the 1981 rule is not before us; accordingly, we do not pass on it. (We do hold, *supra*, that the NRC was authorized by the IOAA to adopt such a rule prospectively.)