**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3656

_____

|  |  |  |
|---|---|---|
| Nebraska Trails Council; Rails to Trails Coalition of Kansas; Iowa Trails Council; East Alabama Regional Planning & Development Commission; Ozark Greenways, Inc.; Friends of the Pumpkinvine Nature Trail, Inc.; Chaparral Rails to Trails, Inc.; Kentucky Rails to Trails Council; Rails to Trails Conservancy, | * * * * * * * * * | |
| | * | |
| Petitioners, | * | |
| | * | On Petition for Review of an Order |
| v. | * | of the Surface Transportation Board. |
| | * | |
| Surface Transportation Board; United States of America, | * * | |
| | * | |
| Respondents. | * | |

_____

Submitted: May 19, 1997
Filed: July 31, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Petitioners, which are several nongovernmental organizations interested in fostering recreational trails, seek review of a decision of the Surface Transportation Board (STB) establishing a $150 fee on requests to use or acquire proposed-to-be-abandoned railroad rights-of-way for interim recreational trail use and rail banking.[1] This Court has jurisdiction to review a final order of the STB pursuant to 28 U.S.C. §§ 2321(a), 2342(5) (Supp. I 1995).  Because we find that this fee is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, the petition for review is denied.

## I.

The Independent Offices Appropriation Act (IOAA), 31 U.S.C. § 9701 (1994), represents the core of the statutory framework guiding the STB's decision.  The IOAA seeks to make "each service or thing of value provided by [a federal] agency . . . self-sustaining to the extent possible," id. § 9701(a), by authorizing the head of each agency to "prescribe regulations establishing the charge for a service or thing of value provided by the agency," id. § 9701(b).  The charges must be fair and based on the Government's costs, the value of the service or thing to the recipient, the public policy or interest being served, and other relevant facts.  See id.

The STB issues regulations establishing fees for a variety of its services. Because of the STB's exclusive jurisdiction over transportation by rail carriers, which includes jurisdiction over the abandonment of railroad lines, see 49 U.S.C. § 10501(b) (Supp. I 1995), many of the STB's services relate to abandonment proceedings.  A rail carrier "who intends to . . . abandon any part of its railroad lines . . . must file an application relating thereto with the [STB]," and the abandonment must be carried out in accordance with 49 U.S.C. §§ 10901-10907 (Supp. I 1995).  49 U.S.C. § 10903(a)(1) (Supp. I 1995); see also Grantwood Village v. Missouri Pac. R.R., 95

---

[1]"Rail banking" refers to the preservation of railroad corridor for future rail use.

F.3d 654, 659 (8th Cir. 1996) (recognizing the exclusive jurisdiction of the Interstate Commerce Commission (ICC)[2] to deem a railroad right-of-way abandoned), cert. denied, 117 S. Ct. 1082 (1997). A rail carrier may abandon a part of its railroad lines "only if the [STB] finds that the present or future public convenience and necessity require or permit the abandonment." 49 U.S.C. § 10903(d) (Supp. I 1995).

Two primary avenues currently are utilized by the STB in authorizing abandonments. First, in a process involving extensive filing, service, and notice requirements, as well as possible STB hearings, the STB may grant applications submitted by carriers seeking to abandon railroad lines. See Abandonment and Discontinuance of Rail Lines and Rail Transportation Under 49 U.S.C. § 10903, 61 Fed. Reg. 67,876, 67,885-90 (1996) (to be codified at 49 C.F.R. §§ 1152.20-1152.25) [hereinafter Abandonment and Discontinuance]. Second, in certain circumstances, the STB may exempt a proposed abandonment from these regulatory provisions. See 49 U.S.C. § 10502(a) (Supp. I 1995); Abandonment and Discontinuance, 61 Fed. Reg. at 67,916 (to be codified at 49 C.F.R. § 1152.50).

To encourage the preservation of railroad rights-of-way for future rail use and to encourage the establishment of nature trails, Congress enacted the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, 97 Stat. 42, 48. Section 8(d) of the amended National Trails System Act (codified as further amended at 16 U.S.C. § 1247(d) (Supp. I 1995)) provides:

> Consistent with the purposes of [the Railroad Revitalization and Regulatory Reform Act of 1976, 45 U.S.C. §§ 801-838 (1994 & Supp. I 1995)], and in furtherance of the national policy to preserve established

---

[2]Effective January 1, 1996, the ICC was abolished and the STB assumed the responsibility for regulating rail transportation. See ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803; Wisconsin Cent. Ltd. v. Surface Transp. Bd., 112 F.3d 881, 883 n.1 (7th Cir. 1997).

railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes. If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the [STB] shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

In sum, as long as a third party agrees to assume financial responsibility for the right-of-way, the rail line will not be considered abandoned, and thus not revert to property owners possessing reversionary interests. See Goos v. ICC, 911 F.2d 1283, 1286 (8th Cir. 1990). Absent a determination of abandonment, the rail property will remain within the STB's jurisdiction. See Hayfield N. R.R. v. Chicago & N. W. Transp. Co., 467 U.S. 622, 633-34 (1984) (stating that unless ICC attaches post-abandonment conditions to certificate of abandonment, the ICC's authorization of abandonment terminates its jurisdiction).

A party interested in acquiring or using a proposed-to-be-abandoned railroad right-of-way for interim trail use and rail banking must, among other requirements, submit a written protest or comment to the STB, see Abandonment and Discontinuance, 61 Fed. Reg. at 67,889 (to be codified at 49 C.F.R. § 1152.25(a)(1)), and file with the STB a "Statement of Willingness to Assume Financial Responsibility," the content of which is prescribed by regulation, see Abandonment and Discontinuance, 61 Fed. Reg.

-4-

at 67,894-95 (to be codified at 49 C.F.R. § 1152.29 (a)(3)).  In a regular abandonment proceeding, if "a railroad agrees to negotiate an interim trail use/rail banking agreement, then the [STB] will issue a CITU [(Certificate of Interim Trail Use or Abandonment)] to the railroad and to the interim trail user for that portion of the right-of-way to be covered by the agreement."  Abandonment and Discontinuance, 61 Fed. Reg. at 67,895 (to be codified at 49 C.F.R. § 1152.29(c)(1)).  In an exemption proceeding, if a railroad agrees to negotiate, then the STB will issue a NITU (Notice of Interim Trail Use or Abandonment).  See Abandonment and Discontinuance, 61 Fed. Reg. at 67,895 (to be codified at 49 C.F.R. § 1152.29(d)(1)).  If no interim trail use/rail banking agreement is reached within 180 days after issuance of either a CITU or NITU, the railroad is permitted to fully abandon its right-of-way.  See Abandonment and Discontinuance, 61 Fed. Reg. at 67,895 (to be codified at 49 C.F.R. § 1152.29(c)(1), (d)(1)).  During this 180-day window, a railroad is under no obligation to negotiate with any prospective interim trail user.  At the same time, however, a railroad is not limited to negotiating with parties that have previously filed trail use requests.  If a trail use requester and a railroad reach agreement concerning interim trail use and rail banking, the agreement is automatically authorized by the CITU or NITU, see Preseault v. ICC, 494 U.S. 1, 7 n.5 (1990), and no abandonment can occur absent further action by the STB.  If a railroad does not wish to negotiate an interim trail use agreement, then no CITU or NITU will be issued, and the STB will act on the abandonment application.  See Abandonment and Discontinuance, 61 Fed. Reg. at 67,895 (to be codified at 49 C.F.R. § 1152.29(b)(1)(ii)).

## II.

On April 5, 1996, the STB issued a notice of proposed rulemaking concerning the 1996 update to its user fee schedule. See Regulations Governing Fees for Services Performed in Connection with Licensing and Related Services--1996 Update, 61 Fed. Reg. 15,208 (to be codified at 49 C.F.R. pt. 1002) [hereinafter Proposed 1996 Fee Schedule].  The STB proposed a number of new fees, including a $650 fee on each

request pursuant to 16 U.S.C. § 1247(d) (Supp. I 1995) for a trail use condition in an abandonment proceeding. See Proposed 1996 Fee Schedule, 61 Fed. Reg. at 15,210 (fee item 27). The $650 figure was based on 1996 cost study data concerning twenty different proceedings where a trail use condition had been requested. The public comments received in response to the proposed fees stressed concerns, inter alia, that the true beneficiaries of trail use requests are not the requesters themselves, but the general public and the railroads whose rights-of-way are preserved through rail banking, and further that the amount of the fee would represent a substantial impediment to groups interested in acquiring railroad rights-of-way for interim trial use.

The STB issued its final revised fee schedule on August 14, 1996. See Regulations Governing Fees for Services Performed in Connection with Licensing and Related Services--1996 Update, 61 Fed. Reg. 42,190, 42,192-94 (codified at 49 C.F.R. § 1002.2(f) (1996)). In its decision adopting the updated fees, the STB explained its position that the trail use requesters were the direct beneficiaries of the STB's services and that it would be inappropriate to assess this fee against the railroads seeking abandonment because trail use requests are not filed in every abandonment proceeding, but arise only at the initiation of the requester. See Regulations Governing Fees for Services Performed in Connection with Licensing and Related Services--1996 Update, STB Ex Parte No. 542, 1996 WL 455536, at *8-9 (Aug. 14, 1996) (reported at 1 S.T.B. 179) [hereinafter STB Ex Parte No. 542]. On the other hand, after taking into account the comments suggesting that the $650 fee would substantially impede the filing of trail use requests, the STB reduced the fee to $150. See id., 1996 WL 455536, at *9. The STB further noted that a trail use requester may ask for a waiver of the fee pursuant to 49 C.F.R. § 1002.2(e) (1996).

## III.

On appeal, petitioners claim that the IOAA does not authorize the $150 charge assessed by the STB for processing a trail use request. Additionally, petitioners allege

that the charge is improper because it is neither commensurate with the amount of work performed by the STB, nor adequately explained.

## IV.

The trail use condition filing fee was promulgated by the STB in accordance with the informal rulemaking procedures of § 553 of the Administrative Procedure Act. See 5 U.S.C. § 553 (1994). Our scope of review is narrow and we will hold unlawful and set aside the agency's rule only if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994); see Humphrey v. United States, 745 F.2d 1166, 1169-70 (8th Cir. 1984) (recognizing narrow judicial review of agency actions). Because Congress expressly authorized the STB to establish fees for services it provides, the STB in exercising that authority "'is at the zenith of its powers,'" Central & S. Motor Freight Tariff Ass'n, 777 F.2d 722, 729 (D.C. Cir. 1985) (quoting American Trucking Ass'ns v. United States, 627 F.2d 1313, 1320 (D.C. Cir. 1980)); therefore, the agency's rule is "entitled to more than mere deference or weight," Batterton v. Francis, 432 U.S. 416, 426 (1977). We may not substitute our judgment for that of the agency. See, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Instead, we must determine whether the agency action was "based upon a consideration of the relevant factors and whether the [agency] committed any clear errors of judgment." Central & S. Motor Freight Tariff Ass'n, 777 F.2d at 729; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (applying standard to review Transportation Secretary's approval of construction through public park).

## A.

Petitioners contend that the fee imposed by the STB on persons requesting a trail use condition is unauthorized by the IOAA and unlawful under § 706(2)(A). In a circular issued in 1959, the Bureau of the Budget (now the Office of Management and

Budget) provided some guidance for implementation of the IOAA. <u>See</u> Budget Circular No. A-25, User Charges (Sept. 23, 1959). Budget Circular No. A-25 allowed for the assessment of a reasonable charge "to each identifiable recipient for a measurable unit or amount of Government service or property from which he derives a special benefit," <u>id.</u> ¶ 3, but noted that "[n]o charge should be made for services when the identification of the ultimate beneficiary is obscure and the service can be primarily considered as benefitting broadly the general public," <u>id.</u> ¶ 3a(2); <u>see also</u> <u>Federal Power Comm'n v. New England Power Co.</u>, 415 U.S. 345, 349-51 (1974) (quoting with approval the aforementioned language from Budget Circular No. A-25 in striking down agency's fee). Petitioners assert that a party requesting a trail use condition is not the identifiable recipient of any special benefit from the STB's services; instead, any benefit that is created by the STB's services flows to the railroad seeking abandonment, to future users of reactivated rail lines, or to the general public. By not properly reflecting the "value to the recipient," in this case the trail use requester, petitioners additionally contend that the fee violates IOAA standards established in <u>National Cable Television Ass'n v. United States</u>, 415 U.S. 336, 342-43 (1974).

Despite Petitioners' contentions to the contrary, the STB has demonstrated adequate grounds for its conclusion that a party requesting a trail use condition is an identifiable recipient of services provided by the STB from which that party derives a special benefit. As the STB indicated in its decision, a party requesting a trail use condition receives the "opportunity to negotiate with the railroad to acquire the rail right-of-way and to delay the abandonment process during the negotiation period." STB Ex Parte No. 542, 1996 WL 455536, at *9. Petitioners correctly point out that the decisions whether or not and with whom to negotiate an interim trail use and rail banking agreement rest entirely with the railroad. This does not, however, diminish the STB's role in fostering the opportunity of a trail use requester, who benefits from the possibility that an interim trail use agreement will be reached. <u>See</u> <u>Goos</u>, 911 F.2d at 1293. By issuing a CITU or NITU, the STB prevents full abandonment of the rail line for 180 days, and thus allows the railroad and the trail use requester the

opportunity to negotiate an agreement before the property is abandoned.[3]   At abandonment, the STB's jurisdiction ceases, and it can no longer grant a trail use request.

Petitioners' other arguments regarding the value to the requester of a trail use request are equally unpersuasive.  Petitioners urge that trail use requesters do not receive any special benefit from the STB's issuance of a CITU or NITU because during this negotiation window a railroad may choose to negotiate with another trail use group, even if that group has not filed for a trail use condition.  Before any group can acquire or use a proposed-to-be-abandoned railroad right-of-way pursuant to 16 U.S.C. § 1247(d) (Supp. I 1995), however, that group must file for a trail use condition.  See Abandonment and Discontinuance, 61 Fed. Reg. at 67,894 (to be codified at 49 C.F.R. § 1152.29(a)); see also Goos, 911 F.2d at 1293.  Therefore, a party interested in interim trail use via 16 U.S.C. § 1247(d) would be taking an enormous risk by relying on another entity to file a request to postpone abandonment, and the tactic only would forestall the fee's inevitable payment should the party successfully negotiate a trail use agreement.  Moreover, because the STB expends time and resources considering a trail use request, it is proper to impose a fee regardless of whether a CITU or NITU is issued or whether a party's trail use request is ultimately successful.  See 49 C.F.R. § 1002.2(c) (1996) (providing that refund of application fee is not warranted merely because application is unsuccessful); Seafarers Int'l Union v. United States Coast Guard, 81 F.3d 179, 185 (D.C. Cir. 1996) (holding that the proper "measure of fees is the cost to the government of providing the service, not the intrinsic value of the service to the recipient"); New England Power Co. v. United States Nuclear Regulatory Comm'n, 683 F.2d 12, 13-14 (1st Cir. 1982) (holding that agency's work at the applicant's request resulted in sufficiently substantial and particularized benefit to

---

[3]We recognize that this window of opportunity is less important in cases where the railroad owns the right-of-way in fee.  In such cases the railroad, even after an abandonment determination, can enter into interim trail use agreements involving the right-of-way without the necessity of invoking 16 U.S.C. § 1247(d) (Supp. I 1995).

applicant to justify fee imposed pursuant to IOAA, even though application was withdrawn).

Assessing a fee against the trail use requester is proper because this is not a case where identification of the ultimate beneficiary must be considered "obscure" or the STB's services must "be primarily considered as benefitting broadly the general public." Bureau of the Budget Circular No. A-25 ¶ 3a(2). By processing a trail use request, the STB creates the possibility for the requesting party to negotiate a trail use agreement (and possibly acquire a valuable interest in railroad property) before abandonment occurs. Any benefits flowing to the public, who may one day use the right-of-way for recreational purposes, reasonably may be regarded as purely incidental to a successful trail use request and do not negate the appropriateness of assessing a fee on trail use requests. See Seafarers Int'l Union, 81 F.3d at 184-85 (analyzing licensing fees imposed by Coast Guard and cautioning against weighing public versus private benefits of receiving the licenses because work of all public agencies is inherently in the public interest); Phillips Petroleum Co. v. Federal Energy Regulatory Comm'n, 786 F.2d 370, 376 (10th Cir.) (recognizing that an agency may charge a fee for services from which an entity derives a special benefit, even though the public also benefits), cert. denied, 479 U.S. 823 (1986); Central & S. Motor Freight Tariff Ass'n, 777 F.2d at 732 (stating that where the public is the incidental beneficiary of an agency's service to the recipient, the agency need not allocate any costs to the public). Any benefits flowing to a railroad, which may someday enjoy the fruits of rail banking, reasonably may be regarded as similarly incidental in nature. In addition, because trail use requests do not arise in all abandonment proceedings, the cost of processing such requests is more appropriately borne by the requesting party.

Petitioners also advance numerous fairness and public policy arguments, which must fail, given our narrow scope of review. The STB assesses fees on requests for trail use conditions, but not on requests for environmental conditions, historic preservation conditions, or public use conditions. Differences between trail use

-10-

conditions and the other conditions, however, adequately explain the STB's position. Because parties requesting environmental and historic preservation conditions do not receive any special benefit from the STB, those conditions are readily distinguishable from a trail use condition. As a result, the STB has determined that the benefits of environmental and historic preservation conditions primarily flow to the general public, and thus imposition of a fee is inappropriate. As far as public use conditions are concerned, the STB has decided against charging a fee because virtually all requests for public use conditions are filed by governmental entities, which are exempt from the STB's fees pursuant to 49 C.F.R. § 1002.2(e)(1) (1996), whereas trail use requests are often filed by private organizations. Additionally, absent the personal negotiatory aspect present in the trail use process, a party requesting a public use condition does not benefit as greatly from the STB's services. The STB has addressed adequately petitioners' public policy concerns that imposition of the fee will discourage parties from requesting trail use conditions by lowering the fee to $150 from the proposed $650 and by noting the availability of a fee waiver under procedures provided in 49 C.F.R. § 1002.2(e) (1996).[4]

Petitioners' additional claim that the fee violates standards established in National Cable Television Ass'n is wholly unavailing. In National Cable Television Ass'n, the Court held unlawful an annual fee imposed by the Federal Communications Commission. See 415 U.S. at 343-44. The fee improperly attempted to recoup the

---

[4]Petitioners express concerns about the availability and timeliness of fee waivers. As far as availability is concerned, waivers for nongovernmental entities are not routinely granted, and petitioners have failed to establish that waiver requests for trail use conditions should be treated any differently. See 49 C.F.R. § 1002.2(e)(2)(ii) (1996). As far as timeliness is concerned, because of time constraints, a trail use requester may have to pay the fee and then seek a waiver. Given that the $150 fee represents only a small portion of the funds a trail use requester must amass in assuming financial responsibility for a railroad right-of-way, this burden does not seem excessively onerous. See STB Ex Parte No. 542, 1996 WL 455536, at *9.

agency's total costs of regulating the cable television industry. See id. at 343. The Court read the IOAA "narrowly as authorizing not a 'tax' but a 'fee,'" and noted that a fee "is incident to a voluntary act," such as an applicant's request to a public agency for a permit to build a house or a license to operate a business. Id. at 340-41. The STB's assessment of a charge to process a trail use request is a fee, and not a tax, as described in National Cable Television Ass'n. Moreover, as previously discussed, a party requesting a trail use condition does derive a special benefit from the STB's services. As such, the fee properly takes into account the "value to the recipient."[5] Id. at 342-43.

## B.

Petitioners next contend that even if the STB could properly assess a fee on an applicant filing a trail use request, the $150 fee actually imposed is both unjustified by the minimal work required of the STB and unsubstantiated by the STB's cost study.

Petitioners have failed to demonstrate that the STB's services do not justify the $150 fee. Among other responsibilities, the STB must review the request to determine if the requesting party satisfies the regulatory requirements and to determine if the railroad has consented to the request. Additionally, the STB's decision must be put in writing and issued by the agency. The petitioners' unsupported and speculative assertions as to the time and effort the STB actually expends in processing trail use requests are unpersuasive, especially in light of our scope of review.

---

[5]The not-for-profit nature of most of the petitioners does not deprive them of receiving value from the STB's services. See Bureau of the Budget Circular No. A-25, User Charges ¶ 3a(1)(a) (Sept. 23, 1959) (stating that a charge is proper if the Government's service enables the beneficiary to obtain more value than the general public, regardless of whether the value is measurable in monetary terms).

The petitioners have also failed to show that the STB's cost study did not provide an adequate explanation for the STB's fee. "Costs shall be determined or estimated from the best available records in the agency, and new cost accounting systems will not be established solely for this purpose." Bureau of the Budget Circular No. A-25 ¶ 5a. Cost determinations do not have to be made "with scientific precision," and must necessarily incorporate numerous approximations because of the practical difficulties in determining costs. Central & S. Motor Freight Tariff Ass'n, 777 F.2d at 736. Petitioners' chief argument concerns the make-up of the cost study data that formed the basis for the fee determination. Costs for the twenty trail use condition filings comprising the study included the costs for concomitant public use condition filings. The STB contends that because both a trail use condition and a public use condition are commonly requested in an abandonment proceeding, and often acted upon by the same staff in a single decision, there is no practical way to break down the costs any further. Ideally, the STB would base its fee on cost data concerning only trail use requests; however, given the reasonableness of this cost determination and the $665.71 fully allocated cost provided by the cost study, we find that the imposition of a $150 fee on a trail use request is adequately supported by the cost study.

## V.

We conclude that the fee imposed by the STB on parties filing trail use requests is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A) (1994). Accordingly, the petition for review is denied.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-